**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JAMES EDWARD WHITE,

                                        Plaintiff,

            - v -                                              Civ. No. 8:17-CV-0109
                                                                              (DJS)
COMM'R OF SOC. SEC.,

                                        Defendant.

**APPEARANCES:**                              **OF COUNSEL:**

SCHNEIDER & PALCSIK                     MARK A. SCHNEIDER, ESQ.
Counsel for Plaintiff
57 Court Street
Plattsburgh, NY 12901

U.S. SOCIAL SECURITY ADMIN.            JAMES DESIR, ESQ.
OFFICE OF REG'L GENERAL COUNSEL        KRISTINA D. COHN, ESQ.
 - REGION II
Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

### MEMORANDUM-DECISION and ORDER[1]

Currently before the Court, in this Social Security action filed by James Edward White

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's Motion for

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 5 & General Order 18.

Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 14 & 15. For the reasons set forth below, Plaintiff's Motion is denied and Defendant's Motion is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.  RELEVANT BACKGROUND

### A.  Factual Background

Plaintiff was born in 1974, making him 40 years old at the alleged onset date and 42 years old at the date of the ALJ's decision. Admin. Tr. ("Tr."), p. 132.[2] Plaintiff reported completing the ninth grade and previously obtaining a commercial driving license.[3] Tr. at p. 42. Plaintiff has past work as a machine packager, construction worker II, plastic products assembler, and dump truck driver. Tr. at p. 219. Generally, Plaintiff alleges disability due to degenerative disc disease ("DDD"), arthritis, obesity, chronic pain, low cognitive functioning, and chronic obstructive pulmonary disease ("COPD"). Dkt. No. 14.

### B.  Procedural History

Plaintiff applied for Supplemental Security Income on May 28, 2014, alleging disability beginning May 15, 2014. Tr. at p. 64. Plaintiff's application was initially denied on August 27, 2014, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at pp. 65 & 71. Plaintiff appeared at a hearing before ALJ Carl E.

---

[2] The Administrative Transcript is found at Dkt. No. 10. Citations to the Administrative Transcript will refer to the Bates-stamped page numbers as set forth therein.

[3] Plaintiff did not have a driving license at the time of the administrative hearing.

Stephan on January 7, 2016.  Tr. at pp. 34-54.  On September 26, 2016, the ALJ issued a

written decision finding Plaintiff was not disabled under the Social Security Act.  Tr. at pp.

8-26.  On January 25, 2017, the Appeals Council denied Plaintiff's request for review,

making the ALJ's decision the final decision of the Commissioner.  Tr. at p. 1.

## C.  The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and

conclusions of law.  Tr. at pp. 13-22.  First, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since May 28, 2014, the application date.  Tr. at p. 13.  Second,

the ALJ found that Plaintiff's alleged impairments including DDD in the lumbar spine,

obesity, and mild COPD were severe impairments and that Plaintiff did not have a severe

medically determinable mental impairment.  Tr. at pp. 13-15.  Third, the ALJ found that

Plaintiff did not have an impairment or combination of impairments that met or medically

equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").

Tr. at p. 15.  Specifically, the ALJ considered the criteria of Listings 1.04 (disorders of the

spine) and 12.00 (adult mental disorders).  Tr. at p. 15.  Fourth, the ALJ found that Plaintiff

had the residual functional capacity ("RFC") to perform light work except:

> claimant can stand for a maximum of two hours in an eight-hour
> workday; claimant can walk for a maximum of two hours in an
> eight-hour workday; claimant can sit for a maximum eight-hours
> in an eight-hour workday; claimant can stand, walk, or sit for
> one hour at a time before needing to change positions for five
> minutes; claimant can occasionally operate bilateral foot
> controls; claimant can occasionally climb stairs, but can never
> climb ladders or scaffolds; claimant can occasionally balance,
> stoop, kneel, crouch and crawl; claimant can occasionally be

expose[d] to extremes in temperature or humidity; and claimant
should never be exposed to vibrations.

Tr. at p. 15.  Fifth, the ALJ found that Plaintiff was unable to perform any past relevant work.

Tr. at p. 21.  Sixth, and last, the ALJ found that there were jobs existing in significant

numbers in the national economy that Plaintiff can perform.  Tr. at pp. 21-22.  The ALJ

therefore concluded that Plaintiff was not disabled.

### D.  The Parties' Briefings on Their Cross-Motions

#### *1.  Plaintiff's Motion for Judgment on the Pleadings*

Generally, Plaintiff makes six arguments in support of his Motion.  Dkt. No. 14, Pl.'s

Mem. of Law, pp. 12-30.  First, Plaintiff argues that he is unable to perform any work on a

full-time, sustained basis because of his combination of spinal impairments, pain, obesity,

low cognitive functioning, and COPD.  *Id*. at pp. 12-21.  Specifically, Plaintiff argues that

he does not have the exertional ability to perform light work (or even sedentary work) due

to chronic pain (which Plaintiff also argues causes non-exertional limitations) and an

inability to sit or stand for long periods.  *Id*. at pp. 13-17.  Plaintiff also argues that the ALJ

did not consider Plaintiff's pain as a non-exertional limitation in determining his RFC and

that the ALJ erred by not fully considering the non-exertional effects of Plaintiff's

documented pain in combination with his other impairments on his RFC.  *Id*. at p. 17.

Second, Plaintiff argues that he is disabled by the combination of his spinal disorder,

chronic pain, obesity, cognitive impairments, and COPD.  *Id*. at pp. 14-15, 17-21. Regarding

his back impairments, Plaintiff argues that he met most of the requisites of Listing 1.04 for

his lumbar radiculopathy including nerve root compromise, limited motion of the spine, sensory loss, and a positive left straight leg raising ("SLR") test in the sitting and supine position.  *Id*. at p. 14.  Plaintiff notes that consultative examiner Nader Wassef, M.D., observed limited range of motion in the lumbar spine, sensory and reflex loss, and an inability to walk on his heels and toes.  *Id*.  Plaintiff also notes the documentation of his spinal impairments throughout the record including a 2015 lumbar MRI and multiple positive SLR tests.  *Id*. at pp. 14-15.

Regarding his obesity, Plaintiff argues that, while the ALJ did find that Plaintiff's obesity is a severe impairment and noted that neurosurgeon Joseph H. Arguelles, M.D. commented that Plaintiff's obesity put him at an increased risk for lower back pain, the ALJ did not otherwise mention Plaintiff's obesity.  *Id*. at p. 19.  Plaintiff notes that Dr. Wassef diagnosed obesity and presumably included it in his opinions that Plaintiff had moderate limitations in standing, sitting, lifting, bending, squatting, climbing or descending steps, driving a car, sitting in a car for long periods of time, operating foot controls, and being exposed to cold environments.  *Id*.  Plaintiff argues that there is no indication that the ALJ considered Plaintiff's obesity in denying his claim.  *Id*.  Regarding his COPD, Plaintiff notes his testimony that he uses a ProAir inhaler, he gets out of breath if he walks over 50 feet, and that his doctor advised him to stop smoking.  *Id*. at p. 21.  Plaintiff argues that this impairment further erodes his RFC to perform light work.  *Id*.

Third, Plaintiff argues that the ALJ failed to develop the record by not ordering a consultative cognitive test in light of Plaintiff's testimony indicating he did not complete the

tenth grade, he cannot read the daily paper or read well, his writing is illegible, and he is computer illiterate (supporting a conclusion that he has a learning disability and/or is cognitively disabled). *Id*. at pp. 19-21. Plaintiff notes that he did not understand what it meant to be put under oath at the administrative hearing and that his girlfriend had to fill out the Social Security forms. *Id*. at p. 21. Plaintiff argues that the ALJ erred by not considering these facts when addressing the RFC. *Id*. Plaintiff also notes that the responses from the vocational expert ("VE") to interrogatories indicated that none of the identified jobs could be performed by a person with Reasoning Level One, Math Level One, and Language Level One. *Id*. Plaintiff argues that he appears to be at Level One in his reasoning, language, and math skills. *Id*.

Fourth, Plaintiff argues that the ALJ misconstrued the meaning of "moderate limitations" and "moderate activity." *Id*. at pp. 22-24. Specifically, Plaintiff argues that Dr. Wassef did not opine moderate limitations in a variety of areas only for *prolonged periods of time* and did not define "moderate." *Id*. at pp. 23-24. Plaintiff argues that these limitations are vague and do not constitute substantial evidence to support the finding that Plaintiff could perform light work on a full-time, sustained basis or the ALJ's RFC determination. *Id*. at p. 24.

Fifth, Plaintiff argues that the ALJ's finding Plaintiff less than fully credible was not supported by clear and convincing evidence. *Id*. at pp. 17, & 24-28. Specifically, Plaintiff argues that the ALJ erred by failing to credit Plaintiff's subjective testimony of pain, even though it was supported by objective medical evidence. *Id*. at p. 17. Plaintiff argues that

objective clinical and radiological evidence including MRIs and examinations by treating sources Dr. Arguelles, chiropractor Aaron W. Perkins, D.C., PT, M.S., and Andrea Farrell, N.P., and consultative examiner Dr. Wassef establish that Plaintiff suffers from severe pain and support his assertion that he cannot perform work because of exertional and non-exertional limitations related to pain. *Id*. at p. 25. Plaintiff argues that the ALJ erred by not considering these medical source statements regarding his pain. *Id*. at pp. 25-28. Plaintiff also argues that the ALJ's decision does not provide any explanation supporting the ALJ's credibility determination, and it does not show any substantive inconsistencies in Plaintiff's testimony, or any medical evidence contradicting his testimony. *Id*. at p. 28.

Sixth, Plaintiff argues that the ALJ erred at Step Five by determining that Plaintiff could perform work as an electrical accessories assembler, a production assembler, or a document preparer. *Id*. at p. 29. Specifically, Plaintiff notes that the VE opined that a person with Level One reasoning, language, and math skills could not perform the identified jobs and that a person who would be off-task fifteen percent of the time or who would miss two days of work a month would be unable to perform any work. *Id*. Plaintiff argues that the ALJ did not meet the Agency's burden at Step Five to prove that Plaintiff can perform other work. *Id*.

### 2. *Defendant's Motion for Judgment on the Pleadings*

Generally, Defendant makes three arguments in support of her Motion. Dkt. No. 15, Def.'s Mem. of Law, pp. 3-18. First, Defendant argues that substantial evidence supports the ALJ's RFC assessment. *Id*. at pp. 5-12. Specifically, Defendant argues that the ALJ cited

diagnostic evidence showing that, although Plaintiff had degenerative changes along his lumbar spine, he showed no signs of fracture, dislocation, fusion, pseudoclaudication, or subluxation and that the ALJ also cited examination and treatment notes showing that, despite Plaintiff's impairments, he consistently had mostly normal examination findings. *Id.* at pp. 5-6.  Defendant also argues that the ALJ considered evidence of Plaintiff's daily activities when determining the RFC. *Id.* at p. 6.

Regarding the opinion evidence, Defendant argues that the ALJ relied on the opinion of Dr. Wassef, who opined only moderate limitations (which Defendant argues are consistent with the ALJ's RFC). *Id.* at pp. 6-8.  Defendant argues that the ALJ reasonably gave significant weight to Dr. Wassef's opinion because it was largely consistent with the medical record. *Id.* at pp. 7-8.  Defendant argues that the ALJ also reasonably relied on the reviewing opinion of medical expert Louis Fuchs, M.D. *Id.* at p. 8.  Defendant argues that, while the ALJ's decision does not complete the sentence where he was about to indicate what weight he gave Dr. Fuchs' opinion, the decision made clear that he generally agreed with the opinion and essentially adopted it and that any error in not explicitly assigning a specific weight to this opinion is harmless. *Id.*

Defendant also argues that Plaintiff's arguments do not provide a basis to disturb the ALJ's decision. *Id.* at pp. 9-12.  Specifically, Defendant argues that the ALJ expressly considered Listing 1.04 and found that Plaintiff did not satisfy it. *Id.* at p. 9.  Defendant additionally argues that Plaintiff does not substantively challenge the ALJ's reasoning. *Id.*

Regarding Plaintiff's alleged cognitive impairment, Defendant argues that Plaintiff does not challenge the ALJ's Step Two findings that there is no medical evidence that Plaintiff was diagnosed with or treated for any mental impairment. *Id*. at p. 10. Regarding Plaintiff's argument that the ALJ failed to develop the record, Defendant notes that Plaintiff was represented by counsel during the proceedings below and, therefore, the ALJ had no heightened duty to develop the record. *Id*. Defendant also argues that Plaintiff mostly relies on his limited education to support his argument but points to no authority to support that a limited education amounts to disability, and that there is no inconsistency between Plaintiff's level of education (classified as limited under the Regulations) and the ALJ's assessment of his vocational profile. *Id*. at pp. 10-11. Defendant additionally argues that the ALJ's decision made clear that he considered Plaintiff's mental capacity, generally, and reconciled the evidence. *Id*. at pp. 11-12.

Regarding Plaintiff's obesity and COPD, Defendant argues that the ALJ found these impairments were severe and cited substantial evidence in support of the RFC assessment, including evidence that documented Plaintiff's weight and respiratory functioning. *Id*. at p. 12.

Second, Defendant argues that the ALJ's credibility determination is supported by substantial evidence. *Id*. at pp. 12-15. Specifically, Defendant argues that Plaintiff mischaracterizes the ALJ's decision by ignoring the evidence that the ALJ relied on, and that the ALJ acknowledged that Plaintiff had experienced pain. *Id*. at p. 13. Defendant argues that the ALJ's decision makes clear that he considered evidence of Plaintiff's various

impairments from the record as a whole consistent with the factors in the regulations including diagnostic evidence, clinical and examination notes, opinion evidence, and evidence of Plaintiff's level of activity. *Id*. at pp. 13-15. Defendant also argues that the ALJ properly considered Plaintiff's testimony surrounding his mental limitations, which conflicted with his lack of alleged mental limitations at the time of his application for benefits and evidence cited by the ALJ showing a lack of mental limitations. *Id*. at pp. 14-15. Defendant argues that the ALJ cited substantial evidence in support of his evaluation of Plaintiff's subjective statements to allow for meaningful review. *Id*. at p. 15.

Third, Defendant argues that substantial evidence supports the ALJ's Step Five finding. *Id*. at pp. 16-18. Specifically, Defendant argues that the ALJ was not required to submit to the VE every limitation alleged by Plaintiff, but only had to convey all of Plaintiff's credibly established limitations. *Id*. at p. 16. Defendant also argues that the Commissioner relies only on the SVP levels, rather than Plaintiff's suggestion of Level One reasoning, language, and math skills. *Id*. at p. 17. Defendant notes that Social Security Ruling ("SSR") 00-49 defines SVP level 2 positions as congruent with unskilled work and argues that Plaintiff had no medically determinable mental impairments that would significantly affect his ability to perform basic work activities, let alone unskilled work. *Id*.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*.,

906 F.2d 856, 860 (2d Cir. 1990).   Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's

determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520 & 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.  ANALYSIS

### A.  Whether Substantial Evidence Supports the ALJ's Step Three Finding that Plaintiff Does Not Have an Impairment or Combination of Impairments that Meet or Medically Equal the Severity of a Listed Impairment

"Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing *Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)).  "To meet a Listing, Plaintiff must show that [his] medically determinable impairment satisfies all of the specified criteria in a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d at 272 (citing 20 C.F.R. § 404.1525(d)).  "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Rockwood v. Astrue*, 614 F. Supp. 2d at 272 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).  Additionally, a court may be able to uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence. *Rockwood v. Astrue*, 614 F. Supp. 2d at 273 (citing *Berry v. Schweiker*, 675 F.2d at 468).

Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment and

*-13-*

specifically considered Listings 1.04 and 12.00.  Tr. at p. 15.  Plaintiff argues that he is

disabled by the combination of his spinal disorder, chronic pain, obesity, cognitive

impairments, and COPD.  Pl.'s Mem. of Law at pp. 14-15, 17-21.  The Court finds this

argument unpersuasive.

Plaintiff has failed to establish that his impairments in combination meet or medically

equal the severity of a listed impairment.  Much of his argument is a recitation of the

evidence of record rather than an application of those facts to the Listings, and the Court

declines any invitation by Plaintiff to reweigh that evidence.  *See Warren v. Comm'r of Soc.*

*Sec.*, 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial

evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the

evidence presented at the administrative hearing, . . . nor will it determine whether [the

applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court

must affirm her decision if there is substantial evidence [in the record] to support it.'"),

*report and recommendation adopted*, 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016) (quoting

*Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)); *Vincent v. Shalala*, 830 F. Supp.

126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the

evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir.

1983)).  Thus, the Court finds that substantial evidence supports the ALJ's finding that

Plaintiff does not have an impairment or combination of impairments that meet or medically

equal the severity of a listed impairment.  *See Lewis v. Colvin*, 122 F. Supp. 3d 1, 7

(N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a

reviewing court 'defers to the Commissioner's resolution of conflicting evidence'" where that resolution is supported by substantial evidence) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); citing *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)).  Remand is therefore not required on this basis.

### B.  Whether Substantial Evidence Supports the ALJ's RFC Determination

Regarding the RFC determination, Plaintiff argues that he is unable to perform any work on a full-time, sustained basis because of his combination of impairments.  Pl.'s Mem. of Law at pp. 12-21.  Plaintiff also argues that the ALJ did not consider Plaintiff's pain as a non-exertional limitation when determining his RFC and that the ALJ misconstrued Dr. Wassef's opinion.  *Id*. at pp. 17, 22-24.  The Court finds that substantial evidence supports the RFC determination.

RFC is defined as "what an individual can still do despite his or her limitations. . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  *Pardee v. Astrue*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work

. . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability.  20 C.F.R. § 404.1513a; *see also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

On August 19, 2014, consultative examiner Dr. Wassef conducted an internal medicine examination and noted that Plaintiff was in discomfort during the examination because of his back.  Tr. at p. 273.  Dr. Wassef noted Plaintiff was able to briefly stand on his heels and toes but was unable to walk on his heels and toes, could squat about halfway, had a normal stance, used no assistive devices, needed no help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty.  *Id.* His chest and lungs were clear to auscultation.  Tr. at p. 274.  His lumbar spine showed

flexion/extension was 45 degrees, full lateral flexion bilaterally, full rotary movement bilaterally, diffuse tenderness in the lumbar spine area as well as both sacroiliac joints, and positive left SLR at 60 degrees in the seated position. *Id*. Deep tendon reflexes were physiologic and equal in the upper and lower extremities, there was no sensory deficit noted, and strength was full in the upper and lower extremities. *Id*. Dr. Wassef indicated diagnoses of discogenic lumbar pain, lumbar radiculopathy, obesity, and poor dental hygiene and opined a fair prognosis. Tr. at p. 275. He opined that Plaintiff had "moderate limitations in regard to standing, sitting, lifting, bending, squatting, climbing or descending steps, driving a car, sitting in a car for long periods of time, operating foot controls, and being exposed to cold environments." *Id*. The ALJ indicated that, although Dr. Wassef examined Plaintiff only once, his opinion was entitled to significant weight because the clinical observations supported Dr. Wassef's findings and because his findings were consistent with the record as a whole. Tr. at p. 20.

On April 11, 2015, treating provider Sarah Howell, FNP-C, completed an application for a parking permit for Plaintiff and stated that Plaintiff had a diagnosis of DDD and was unable to walk more than fifty feet without pain. Tr. at p. 200. The ALJ afforded very little weight to this opinion because Ms. Howell was not an acceptable medical source and because the medical evidence provided no basis to conclude that Plaintiff's ability to walk was limited in the extreme manner that Ms. Howell opined. Tr. at p. 20. The ALJ also noted that Ms. Howell's treatment records indicated that she generally observed that Plaintiff was in no acute distress and that he ambulated normally. *Id*.

On March 29, 2016, medical expert Dr. Fuchs provided responses to medical interrogatories posed by the ALJ and opined that Plaintiff's impairments included obesity, deconditioning, and lumbosacral myofasciitis. Tr. at pp. 358-82. Dr. Fuchs noted that exams revealed decreased spinal motions while neurological functioning was intact. Tr. at pp. 272-75, 300, 338, & 373. Dr. Fuchs opined that Plaintiff did not meet Listing 1.04A because neurological functioning was intact. Tr. at p. 374. He indicated that Plaintiff did not require the use of a cane to ambulate. Tr. at p. 377. He opined that Plaintiff could continuously lift and carry up to ten pounds, occasionally lift and carry eleven-to-twenty pounds, and never lift or carry over twenty pounds; he could sit, stand, or walk for one hour at a time without interruption, sit for a total of eight hours, and stand or walk for two hours in a workday; he could continuously use his hands for reaching, handling, fingering, feeling, pushing, or pulling; he could occasionally use his feet for the operation of foot controls; he could occasionally climb stairs, ramps, ladders or scaffolds; he could occasionally balance, stoop, kneel, crouch, or crawl; and he could continuously tolerate unprotected heights and moving mechanical parts, frequently tolerate operating a motor vehicle, occasionally tolerate humidity, wetness and extreme cold/heat, and never tolerate vibrations. Tr. at pp. 376-80. Dr. Fuchs opined that these limitations had lasted or would last for 12 consecutive months. Tr. at p. 381. The ALJ summarized this opinion, noting that Dr. Fuchs provided an opinion indicating that Plaintiff was capable of light work. Tr. at pp. 20-21. The ALJ's analysis of this opinion cuts off before a specific assignment of weight was articulated. Tr. at p. 21.

The ALJ's decision indicates an adequate review of the evidence of record and analysis of Plaintiff's RFC for a modified range of light work. Tr. at pp. 15-21. When determining the RFC, the ALJ considered the medical evidence, opinion evidence, and Plaintiff's testimony regarding his impairments, symptoms, and limitations. *Id.* The ALJ's RFC analysis summarizes the relevant medical evidence and discusses, in detail, Plaintiff's various impairments including DDD, chronic pain, obesity, and mild COPD. *Id.*

As Defendant argues, while the ALJ's decision does not complete the sentence where he was about to indicate what weight he gave Dr. Fuchs' opinion, the RFC is consistent with that opinion. Def.'s Mem. of Law at p. 8. The RFC is also consistent with Dr. Wassef's opinion. Plaintiff argues that the ALJ misconstrued the moderate limitations opined by Dr. Wassef and that these limitations are vague. Pl.'s Mem. of Law at pp. 22-24. However, the moderate limitations as opined by Dr. Wassef are not inconsistent with an RFC for light work. *See Gurney v. Colvin*, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) (finding no error in an RFC for light work where a source opined moderate limitations in the abilities to perform repetitive heavy lifting, bending, reaching, pushing, pulling, or carrying) (collecting cases making similar findings); *James v. Astrue*, 2010 WL 5536338, at *6 (N.D.N.Y. May 7, 2010) (finding the ALJ's conclusion that plaintiff could lift 20 pounds occasionally and 10 pounds frequently was inconsistent with the consultative examiner's "moderate-to-severe" limitation in lifting and carrying, noting however that a moderate limitation "would not necessarily be incompatible with the ability to perform light work").

Additionally, the relatively benign findings on Dr. Wassef's examination provide a context from which the ALJ could interpret Dr. Wassef's characterization of "moderate limitations." *See Monroe v. Comm'r of Soc. Sec.*, 2016 WL 7971330, at *7-8 (N.D.N.Y. Dec. 29, 2016), *report and recommendation adopted*, 2017 WL 318838 (N.D.N.Y. Jan. 23, 2017) (noting that, even where a "consultative examiner's opinion may use terminology that, on its face, is vague, such language does not render the consultative examiner's opinion useless in all situations" so long as it is "well supported by his extensive examination" or it can be made "more concrete" by "the facts in the underlying opinion and other opinion evidence in the record") (citing *Zongos v. Colvin*, 2014 WL 788791, at *10 (N.D.N.Y. Feb. 25, 2014); *Waldau v. Astrue*, 2012 WL 6681262, at *4 (N.D.N.Y. Dec. 21, 2003); *Davis v. Massanari*, 2001 WL 1524495, at *8 (S.D.N.Y. Nov. 29, 2001)).  Given the complete context, Dr. Wassef's use of the term "moderate" is therefore not too vague to be useful for determining Plaintiff's functional capacity.

Plaintiff contends that the ALJ did not properly consider his pain as a non-exertional limitation in determining his RFC.  Pl.'s Mem. of Law at pp. 15-17.  As discussed below, at Point III.D., the ALJ considered the evidence in the record regarding Plaintiff's pain, including from the medical sources, and Plaintiff's testimony, and adequately explained the basis for his determination.  Tr. at pp. 16-18.  As such, the ALJ's credibility determination of Plaintiff regarding his pain was supported by substantial evidence.

Plaintiff also contends that the ALJ did not discuss or properly consider Plaintiff's obesity.  Pl.'s Mem. of Law at p. 17.  The ALJ determined that Plaintiff's obesity was a

severe impairment, and described a medical opinion that noted a potential impact of Plaintiff's obesity on his other conditions.  Tr. at p. 18.  The ALJ adopted Dr. Wasseff's findings, which explicitly addressed Plaintiff's obesity, and also discussed Dr. Arguelles's analysis of potential health impacts of Plaintiff's obesity.  Tr. at pp. 18 & 20.  This is therefore not a situation where "the ALJ[] fail[ed] to indicate that he was even aware of evidence showing plaintiff suffered from obesity."  Pl.'s Mem. of Law at p. 18 (citing *Cornell v. Astrue*, 764 F. Supp. 2d 381, 402-03 (N.D.N.Y. 2010)).  Rather, "[w]hen an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions." *Guadalupe v. Barnhart*, 2005 WL 2033380, *6 (S.D.N.Y. Aug. 24, 2005); *Searles v. Comm'r of Soc. Sec.*, 2015 WL 9582726, *9 (N.D.N.Y. Nov. 30, 2015), *report and recommendation adopted*, 2015 WL 9581830 (N.D.N.Y. Dec. 30, 2015) ("Here, the ALJ found Plaintiff's obesity to be a severe impairment.  As set forth above, the health professionals who treated Plaintiff and opined on Plaintiff's functional limitations were all well aware of his obesity.").

 "Moreover, Plaintiff does not point to any assessments of limitations specifically arising from his obesity."  *Niles v. Astrue*, 32 F. Supp. 3d 273, 283 (N.D.N.Y. 2012).  Pursuant to the Regulations, the ALJ is not to "make assumptions about the severity or functional effects of obesity combined with other impairments;" rather, the ALJ must "evaluate each case based on the information in the case record."  SSR 02-1p, 2002 WL 31026506 ¶ 7 (Sept. 12, 2002).  The ALJ's failure to provide a lengthy discussion of Plaintiff's obesity is therefore not error.

For the above reasons, the ALJ's analysis of the evidence and resulting RFC are supported by substantial evidence.

## C. Whether the ALJ Properly Developed the Record

Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Social Security Act, "the ALJ generally has an affirmative obligation to develop the administrative record" due to the non-adversarial nature of a hearing on disability benefits. *Burgess v. Astrue*, 537 F.3d at 128 (quoting *Melville v. Apfel*, 198 F.3d 52; citing *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002), *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004), *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)). "It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)). An "ALJ must make every reasonable effort to help [the claimant] obtain medical reports from the claimant's medical sources so long as permission is granted to request such reports." *Hart v. Comm'r*, 2010 WL 2817479, at *5 (N.D.N.Y. July 16, 2010) (quoting 20 C.F.R. § 404.1512(d)) (internal quotation marks omitted).

Here, the ALJ ordered a consultative internal medicine examination, sent interrogatories to a vocational expert and proffered the response to Plaintiff's attorney (additional interrogatories from Plaintiff's attorney were also sent to the vocational expert and responses were entered into the record), and sent interrogatories to medical expert Dr.

Fuchs (the interrogatories and responses were entered into the record). Tr. at pp. 211-38, 271-77, & 358-82.

Despite the above, Plaintiff argues that the ALJ failed to develop the record by not ordering consultative cognitive testing specifically as to Plaintiff's cognitive functioning in light of his testimony indicating he did not complete the tenth grade, he cannot read the daily paper or read well, his writing is illegible, and he is computer illiterate (facts which Plaintiff argues support a conclusion that he has a learning disability and/or is cognitively disabled).[4] Pl.'s Mem. of Law at pp. 19-21. The Court finds this argument unpersuasive.

Plaintiff did not allege any mental impairment or limitations related to a cognitive impairment at the initial determination level. Tr. at p. 55. In his Step Two analysis, the ALJ considered the possibility of a mental impairment but found that there was no medical evidence that Plaintiff had ever been diagnosed with or treated for any mental impairment and that the little objective medical evidence in the record pertaining to Plaintiff's mental health provided no basis to conclude that Plaintiff had any medically determinable mental impairment. Tr. at pp. 13-15.

"Generally, additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic

---

[4] The ALJ found that Plaintiff did not have a medically determinable mental impairment. Tr. at pp. 13-15. The "RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments" and "the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments." SSR 96-8p. The Court finds, therefore, that the ALJ did not err in failing to assess limitations relating to Plaintiff's alleged cognitive impairment.

techniques." *Janes v. Berryhill*, 2017 WL 972110, at *4 (N.D.N.Y. Mar. 10, 2017), *aff'd*, 710 F. App'x. 33 (2d Cir. 2018) (citing 20 C.F.R. § 404.1520b; *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)).   In this case, however, there does not appear to be such a conflict as there is little, if anything, to support Plaintiff's alleged cognitive impairment other than statements at the hearing indicating difficulty reading or writing.  "[T]he ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it." *Monroe v. Comm'r of Soc. Sec.*, 2016 WL 7971330, at *3 (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013); *Lefever v. Astrue*,  2010 WL 3909487, *7 (N.D.N.Y. Sept. 30, 2010), *aff'd*, 443 F. App'x 608 (2d Cir. 2011)).   In his decision, the ALJ noted Plaintiff's testimony that his writing was not legible, he did not read well, he did not read the newspaper, and he was computer illiterate.  Tr. at p. 14.  The decision also notes the lack of evidence indicating that Plaintiff had ever been diagnosed with or treated for any mental impairment and includes the ALJ's finding that Plaintiff did not have a medically determinable mental impairment.  Tr. at pp. 13-15.

The Court finds that the ALJ did not abuse his discretion in failing to order consultative cognitive testing because the record contained sufficient information for the ALJ to make a determination, including a lack of evidence supporting a medically determinable mental impairment and Plaintiff's past work history and professed ability to perform work-related tasks. *Monroe  v. Comm'r of Soc. Sec.*, 2016 WL 7971330, at *5-6; Tr. at pp. 39-42,

137, 157-64, 194, & 219.  For the reasons above, the Court finds that the ALJ did not fail to properly develop the record.  Remand is therefore not required on this basis.

### D.  Whether Substantial Evidence Supports the ALJ's Credibility Determination

In determining whether a claimant is disabled, the ALJ must make a determination as to the credibility of the claimant's allegations.  "An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence."  *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).  The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that, "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'"  *Schlichting v. Astrue*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d at 642; *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)).  Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference.  *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

Here, the ALJ found that the statements of Plaintiff, his girlfriend, and Kaela Homburger (an employee of Plaintiff's representative who assisted Plaintiff in completing the disability report at Exhibit 6E) concerning the intensity, persistence, and limiting effects of his symptoms were not fully consistent with the evidence. Tr. at pp. 16-17, 20, 143-56, & 167-72. Plaintiff argues that the ALJ erred when finding Plaintiff less than fully credible. Pl.'s Mem. of Law at pp. 17, 24-28.

When considering Plaintiff's RFC and credibility, the ALJ summarized Plaintiff's testimony and function reports as well as the medical evidence of record. Tr. at pp. 16-22. In doing so, the ALJ's decision indicates implicit bases for the adverse credibility finding, if not explicit reasons. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) ("While it is 'not sufficient for the [ALJ] to make a single, conclusory statement that' the claimant is not credible or simply to recite the relevant factors, [] remand is not required where 'the evidence of record permits us to glean the rationale of the ALJ's decision.'") (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

For example, the ALJ noted that Plaintiff first reported that he does not drive because he lost his license when he fell behind on child support, but later in the hearing indicated that it was not very comfortable for him to drive. Tr. at p. 16. The ALJ also noted that there was no objective medical evidence to corroborate Plaintiff's claim that he becomes out of breath when he walks more than fifty feet. *Id*. The ALJ's analysis of Plaintiff's testimony notes that, at one point, Plaintiff was "somewhat evasive" in his response to a question at the hearing. *Id*. The ALJ also pointed out an inconsistency between Plaintiff's testimony (he

reported that his girlfriend did the cooking, cleaning, and shopping in his house) and his girlfriend's function report (indicating that Plaintiff went shopping for food and clothing once or twice a week and that he washed dishes, cleaned off the table, and did laundry).  Tr. at p. 17.  Finally, the ALJ indicated that the opinion evidence was not consistent with the severity of symptoms and the degree of limitations that would preclude Plaintiff from performing any work.  Tr. at p. 20.

For the reasons above, the Court finds that the ALJ's credibility determination is supported by substantial evidence.  Remand is therefore not required on this basis.

### E.  Whether the ALJ's Step Five Determination is Supported by Substantial Evidence

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "to show there is other work that [the claimant] can perform."  *McIntyre v. Colvin*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and] . . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved."  *McIntyre v. Colvin*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)).  If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's

response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee v. Astrue*, 631 F. Supp. 2d at 211 (citing *Melligan v. Chater*, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

Plaintiff argues that the ALJ erred at Step Five by determining that Plaintiff could perform work as an electrical accessories assembler, a production assembler, or a document preparer. Pl.'s Mem. of Law at p. 29. Specifically, Plaintiff notes that the VE opined that a person with Level One reasoning, language, and math skills could not perform the identified jobs and that a person who would be off-task fifteen percent of the time or who would miss two days of work a month would be unable to perform any work. *Id*. The Court finds these arguments unpersuasive.

As discussed above, Plaintiff has not established that the non-exertional limitations he alleges should have been credited by the ALJ, either in relation to a cognitive impairment or his chronic pain. The ALJ's analysis of Plaintiff's limitations and the resulting RFC and Step Five determinations are supported by substantial evidence. Remand is therefore not required on these bases.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED,** that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

**SO ORDERED**.

Date:  May 10, 2018
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge